**State of New York
DIVISION OF HUMAN RIGHTS
One Fordham Plaza; 4th Floor
Bronx, New York 10458-5871**

# A RESOURCE GUIDE TO THE NEW YORK STATE HUMAN RIGHTS LAW

**Prepared by:
Albert J. Kostelny, Jr.
Associate Attorney
2nd ed. 2003**

**Updated and revised by:
Elaine A. Smith
Associate Attorney
5th ed. 2016**
*(with updates through 2019)*

**Link for**
*Printable Version*

**Links to Legal Resources:**

**Legal Resources Notebook**
*opens the Legal Resources notebook in CMS*

**Legal Resources Topics Index**
*Lists topics and subtopics for searching the Legal Resources notebook*

# TABLE OF CONTENTS

## HOW TO USE THE RESOUCE GUIDE

## INTRODUCTION

LIBERAL CONSTRUCTION

ORIGINS AND DEVELOPMENT OF THE HUMAN RIGHTS LAW

Scope and Coverage of the Human Rights Law:  Sections 296 and 296-A of the Executive Law Outlined in a Table Format

# HOW TO USE THE RESOUCE GUIDE

The Resource Guide to the New York State Human Rights Law, updated in 2012, is a tool for Division employees to learn about the Law and the New York State Division of Human Rights, the State Agency charged with enforcing the Law.  The Guide describes the origins and development of the Law, outlines various theories of discrimination, with citations to the relevant case law, and discusses Division investigative and adjudicatory procedures.  However,

- it is not a substitute for General Counsel's Legal Opinions; continue to consult those opinions whenever they are available on legal issues that arise.

- it cannot replace detailed research on legal questions; continue to seek advice on  novel or complex legal issues from the General Counsel.

The Resource Guide should be used as a source for case law and other authority, but *not* as an authority in itself, and may not be cited in any Division report, memorandum or legal document as an authority.

The Division's interpretation of Human Rights Law is governed by New York State case law and other authority cited in the Resource Guide.  Such case law and other authority may be relied upon, in the following order, in interpreting the Human Rights Law.

a.  Court of Appeals decisions
b.  Appellate Division decisions
c.  Supreme Court decisions
d.  Commissioner's Orders After Hearing
e.  General Counsel's Legal Opinions.

THE FEDERAL CASE LAW CITED IN THE RESOURCE GUIDE, WHILE IT MAY HAVE PERSUASIVE AUTHORITY, **NEVER** CONTROLS THE DIVISION'S INTERPRETATION OF THE NEW YORK STATE HUMAN RIGHTS LAW.

Pursuant to the enhancement to the liberal construction clause of the Human Rights Law (*see* Liberal Construction), U.S. Supreme Court decisions provide a floor below which the interpretation of the Human Rights Law should not fall, but those decisions do not necessarily prevent a more liberal interpretation of the Human Rights Law in comparison with federal statutes.

# INTRODUCTION

This section discusses the legal theory of liberal construction and its application to the Human Rights Law, and contains a concise history of the Human Rights Law, as well as a brief description of the scope and coverage of the Human Rights Law.

## LIBERAL CONSTRUCTION

Since at least 1951, the Human Rights Law has contained a "liberal construction" clause in **N.Y. Exec. L.** § 300.

> Generally speaking remedial statutes … are liberally construed, to spread their beneficial result as widely as possible. Such statutes should be so construed as to give effect to the intention of the lawmakers, that is, to effect or carry out the reforms intended and to promote justice, particularly where the statutes are designed to correct imperfections in a prior law. A liberal construction of such statutes is one which is in the interest of those whose rights are to be protected, and if a case is within the beneficial intention of a remedial act it is deemed within the statute, though actually it is not within the letter of the law.

Comentarry found in McKinney's Cons. Laws of N.Y., Book 1, Statutes § 321); portion of the above quoted in *Dewine v. State of New York Bd. of Examiners of Sex Offenders*, 89 A.D.3d 88, 930 N.Y.S.2d 332 (4th Dept. 2011). *See also People by Schneiderman v. Ivybrooke Equity Enterprises, LLC*, 175 A.D.3d 1000, 107 N.Y.S.3d 248 (4th Dept. 2019) (applying liberal construction to a local fair housing code).

Furthermore, the liberal construction clause was enhanced by amendment effective August 12, 2019. The Human Rights Law is to be liberally construed, under New York State law, without reference to any federal law that may lead to a more narrow result. Also, exceptions and exemptions contained in the HRL are to be construed narrowly. The liberal construction clause now reads as follows:

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct. …

N.Y. Exec. L. § 300.

New York courts have "always strived to resolve federal and state employment discrimination claims consistently." *Zakrzewska v. The New School*, 14 N.Y.3d 469, 902 N.Y.S.2d 838 (2010). However, this rule must yield where the plain language of the state or local statute provides for a different result. The court in *Zakrzewska* found that interpretations of federal and state antidiscrimination laws did not constrain the interpretation of the New York City Human Rights Law, where the City Law provided explicit standards that were more liberal. In light of the enhancement to the liberal construction clause found in the State Human Rights Law, consistency with federal law should no longer constrain its interpretation.

# ORIGINS AND DEVELOPMENT OF THE HUMAN RIGHTS LAW

New York was the first state to enact a fair employment practices statute, the Law Against Discrimination, in 1945. A new state agency, the State Commission Against Discrimination, was created to enforce this new statute. The Law Against Discrimination initially prohibited employment discrimination only on the bases of race/color, creed, or national origin. The Law Against Discrimination was amended in 1952 to prohibit discrimination in places of public accommodation, and in 1955 and 1956 to prohibit discrimination with respect to housing. Age discrimination in employment was prohibited by a 1958 amendment to the Law Against Discrimination in private housing, commercial space and undeveloped land on the bases of race/color, creed, or national origin was prohibited by a 1961 amendment to the Law Against Discrimination.

In 1962, the State Commission Against Discrimination was renamed the State Commission for Human Rights. Retaliation was banned by a 1963 amendment, and sex discrimination in employment was banned by a 1965 amendment, to the Law Against Discrimination. In 1968, the Law Against Discrimination was renamed the Human Rights Law and a State Division for Human Rights under a single Commissioner was created to replace the State Commission for Human Rights. The 1968 statute also established the system for trying discrimination complaints before hearing examiners which still exists today.

Affirmative action plans were sanctioned, and "blockbusting" prohibited, by 1969 amendments to the Human Rights Law. Sex discrimination in all aspects of housing was prohibited by a 1970 amendment to the Human Rights Law. Reasonable accommodation for employees' religious observance by employers was mandated by a 1971 amendment to the Human Rights Law. Sex discrimination in places of public accommodation was also barred by a 1971 amendment to the Human Rights Law. Discrimination in credit on the bases of race/color, creed, national origin, sex, or marital status was prohibited by a 1974 amendment to the Human Rights Law.

Disability discrimination with respect to employment, housing and public accommodations was banned by a 1974 amendment to the Human Rights Law.  Marital status discrimination in employment, housing and public accommodations was prohibited by, and discriminatory boycotts banned, by 1975 amendments to the Human Rights Law.  Disability discrimination with respect to credit, and employment discrimination against persons with arrest records or criminal convictions, under certain circumstances, prohibited, by 1976 amendments to the Human Rights Law.  Protections against disability discrimination exceeding those provided under federal law were enacted by 1979 and 1983 amendments to the Human Rights Law.

Familial status discrimination in housing was banned, and a duty of housing providers to reasonably accommodate persons with disabilities was established, by a 1991 amendment to the Human Rights Law.  In 1996, New York became the first state to ban employment discrimination against persons with a predisposing genetic characteristic determined as a result of genetic testing.

In 1997, the Human Rights Law was amended to clarify that employers were required to provide reasonable accommodations to employees with disabilities.

The Division's enforcement power was expanded in 1999 to make remedies for housing discrimination under the Human Rights Law "substantially equivalent" to those under the federal Fair Housing Act.

The obligations of employers, and the rights of employees, with respect to accommodation for religious observance, were clarified in a 2002 amendment to the Law.

Amendments effective in 2003 added sexual orientation and military status as protected classes in all areas of jurisdiction, added sex as a protected class for education jurisdiction, and also prohibited harassment of students.

Amendments enacted in 2007 clarified protections for persons using service dogs, required reasonable accommodation of disabilities by public accommodations, and extended employment protections for persons with arrest and conviction records.

Amendments enacted in 2009 extended the remedial provisions of the Law to permit the assessment of civil fines and penalties, added employment protections for victims of domestic violence, and extended coverage under the arrest provisions to additional types of sealed convictions.

In 2010, amendments clarified that landlords are responsible for the cost of reasonable accommodations to the common use portions of dwellings, and created new section 296-b, providing protection against harassment, on the basis of gender, race, religion and national origin, for domestic workers.

In 2011, new section 296-c was added, protecting unpaid interns from discrimination.

Numerous amendments in 2015 included the following:  public accommodation provisions clarified and expanded (public accommodations owned by governmental entities and all public areas of buildings are covered; and removes the exemption for libraries; federal ADA standard of "undue burden" applies for reasonable accommodation of disability by government-owned accommodations); training of guide, hearing and service dogs now protected; adoption of federal ADA standards for reasonable accommodation of service animals by public accommodations; familial status added as a protected category for employment, apprentice training programs, volunteer firefighters, boycott/blacklisting; "pregnancy-related condition" defined and reasonable accommodation required.

Amendment in 2017 extended coverage under the arrest provisions to convictions that may be sealed ten years after release from prison under certain circumstances.

Extensive amendments in 2019 included the following:  gender identity or expression made a protected category; lawful source of income made a protected category for housing; expands "arrest" protections to include cases adjourned in contemplation of dismissal and adds arrest protection for housing and volunteers; hairstyles historically associated with race made part of the protected category of race; education jurisdiction extended to public schools; reasonable accommodation of religious attire, clothing or facial hair; Effective February 8, 2020, requirement that employers have four or more employee eliminated; creation of new ¶296.1(h), harassment provisions and liability standards; expansion of protections for domestic workers to all types of harassment; non-employees in the workplace protected from all discrimination, all bases; attorney's fees extended to all employment cases; punitive damages extended to all private employment cases; expansion of domestic violence victim protections in employment to include specific reasonable accommodations.

The Human Rights Law is not only the oldest state anti-discrimination statute in the United States, but also one of the most expansive in scope, and its provisions have been widely copied by others states.

*Human Rights (Ross)*, 159 A.D.2d 978, 552 N.Y.S.2d 763 (4th Dept. 1990); *Electchester Housing Project, Inc. v. Rosa*, 225 A.D.2d 772, 639 N.Y.S.2d 848 (2d Dept. 1996).

Further information on the numerous legal issues surrounding amendments is available in the Division instructional document, Amendments at Hearing.


# INVESTIGATION


"After the filing of a complaint, the regional director of the division office in which it was filed, or to which it has been transferred, shall make, with the assistance of staff, a prompt and fair investigation of the allegations of the complaint." 9 **N.Y.C.R.R.** § 465.6(a).

The Division may also initiate its own investigations, and may serve subpoenas in connection therewith, prior to filing a complaint on its own motion. *H&R Block Tax Services, Inc. v. N.Y. State Div. of Human Rights*, 2008 N.Y. Misc. LEXIS 2096, 239 N.Y.L.J. 62 (Sup.Ct. Bronx Co. 2008).

The information below covers procedures for complaints filed by persons aggrieved.


## Time Frame of Investigation

"Within one hundred eighty days after a complaint is filed, the division shall determine whether it has jurisdiction and, if so, whether there is probable cause to believe that the person named in the complaint, hereinafter referred to as the respondent, has engaged or is engaging in an unlawful discriminatory practice." **N.Y. EXEC. L.** § 297.2. The above-referenced time frames are directory, not mandatory. *Union Free School District v. N.Y. State Human Rights Appeals Board*, 35 N.Y.2d 371, 362 N.Y.S.2d 139 (1974).

Failure to comply with said time frames can divest the Division of jurisdiction only if the delay substantially prejudices a respondent's ability to defend against a complaint. *Sarkisian Brothers, Inc. v. State Division of Human Rights*, 48 N.Y.2d 816, 424 N.Y.S.2d 125 (1979); *Diaz Chemical Corp. v. N.Y. State Div. of Human Rights (Catlin)*, 91 N.Y.2d 932, 670 N.Y.S.2d 397 (1998) (employer failed to show substantial actual prejudice caused by 14 year delay in proceeding, therefore dismissal was not required).

However, excessive delay resulting in substantial prejudice to respondent has served to oust the Division of jurisdiction. *Annex Hotel v. N.Y. State Div. of Human Rights (Francois)*, 45 A.D.3d 360, 846 N.Y.S.2d 94 (1st Dept. 2007), lv. denied 10 N.Y.3d 715, 862 N.Y.S.2d 336 (2008) (inexplicable 17-year delay between the filing of the complaint and respondent's final order caused substantial prejudice to petitioner, whose key witness, the person who allegedly committed the sexual harassment, died before his testimony was taken).

# Termination of Investigation by Complainant

The complainant may terminate the investigation at any time by withdrawing the complaint. 9 **N.Y.C.R.R.** § 465.5(a). A withdrawal extinguishes the complainant's right to pursue the Human Rights Law claim in any other forum. *Scott v. Carter Wallace, Inc.*, 147 A.D.2d 33, 541 N.Y.S.2d 780 (1st Dept. 1989). However, a withdrawn complaint may be refiled with the Division if still within the one year statute of limitations. 9 **N.Y.C.R.R.** § 465.20(d).

The complainant may also terminate the investigation by seeking an annulment, or by proceeding in federal court and accepting an administrative convenience dismissal. Unlike withdrawals, these terminations contemplate further proceedings in another forum.

For further details on withdrawals, see below Procedure: Division Final Orders: Withdrawals and Discontinuances.

For further details on annulment, see above Procedure: Complaints: Election of Remedies: Annulment.

For further details on dismissal for administrative convenience, see below Procedure: Division Final Orders: Administrative Convenience Dismissals.

# Determination of Jurisdiction

Before investigating a complaint on the merits, an analysis must be made as to the Division's jurisdiction. In determining whether or not the Division has jurisdiction over a complaint, the following four questions must all be answered in the affirmative:

1) Was the complaint timely filed with the Division? (Note that if the complaint is not timely, the dismissal is for untimeliness, not for lack of jurisdiction. See above Procedure: Complaints: Statute of Limitations: Untimeliness Dismissals.)

2) Is the complainant an aggrieved person within the meaning of the Human Rights Law?

3) Is the respondent subject to the personal jurisdiction of the Division?

4) Does the complaint raise issues within the subject matter jurisdiction of the Division?

The remaining two jurisdictional questions must be answered in the negative:

5) Is the Division's jurisdiction over the complaint barred by a prior election of remedies? (See above Procedure: Complaints: Election of Remedies.)

6) Is the Division's jurisdiction over the complaint completely preempted by non-waivable provisions of another federal or state statute?

With regard to item (3), examples where the Division lacks jurisdiction over the respondent are as follows:

- any department or instrumentality of the federal government. General Counsel's Legal Opinions Nos. 2002-22 (no jurisdiction over Amtrak) and 1995-11 (no jurisdiction over Smithsonian Magazine). *Always contact General Counsel on the issue of what is an "instrumentality".*

- any entity that qualifies as a "federal enclave". *Hooda v. Brookhaven National Laboratory*, 659 F.Supp.2d 382 (E.D.N.Y. 2009) (no HRL jurisdiction over Brookhaven National Labs, which is a federal enclave). *Always contact General Counsel before dismissing.*

- military employment, even if New york State is the employer. *James v. Pataki*, 300 A.D.2d 137, 752 N.Y.S.2d 44 (1st Dept. 2002); General Counsel's Legal Opinion No. 1997-02 (no HRL claim against New York National Guard). *Always contact General Counsel before dismissing.*

- businesses operated by "agents or instrumentalities" of recognized Indian tribes have "tribal sovereign immunity", which is broader than the sovereign immunity enjoyed by foreign nations. *Smith v. Oneida Employment Services*, 2009 WL 890614 (N.D.N.Y.); General Counsel's Legal Opinions Nos. 2008-13, 2002-17 and 2012-05. *Always contact General Counsel before dismissing.*

- public transportation services (air carriers, the National Railroad Passenger Corporation, public transportation facilities, vehicles or services owned, leased or operated by the state, a county, city, town or village, or any agency thereof, or by any public benefit corporation or authority) are exempt from the reasonable accommodation provisions of §§ 296.2(c) and (d) of the Law. **N.Y. EXEC. L.** § 296.2(e)

- a bank over which the Federal Deposit Insurance Corporation (FDIC) has been appointed as Receiver. General Counsel's Legal Opinion No. 2011-01.

- the United Nations. *Brzak v. United Nations*, 597 F.3d 107 (2d Cir. 2010); *Hunter v. United Nations*, 2004 N.Y. Slip Op. 51751U, 6 Misc.3d 1008A (Sup.Ct. N.Y.Co. 2004).

- the Mission of a foreign government. *Hijazi v. Permanent Mission of Saudi Arabia to the United Nations*, 2010 WL 5174946, 111 Fair Empl.Prac.Cas. (BNA) 65 (2d Cir.).

With regard to item (6), only complete preemption is a jurisdictional bar to the Division proceeding. (More limited, non-jurisdictional conflicts with other law are covered above in Theories of Discrimination: Affirmative Defenses: Requirements of Other Statutes.) The primary example of complete pre-emption occurs with the federal Employee Retirement Income Security Act (ERISA), which pre-empts "any and all State laws insofar as they may

now or hereafter relate to any employee benefit plan". 29 **U.S.C.** § 1144 (a). The term "employee benefit plan" is defined by ERISA as including both pension and welfare plans. 29 **U.S.C.** § 1002. The U.S. Supreme Court has ruled that the Human Rights Law is pre-empted by ERISA with respect to employee benefit plans, but "only insofar as it [the Human Rights Law] prohibits practices that are lawful under federal law." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 108 (1983). Therefore, where the alleged discrimination would be unlawful under any of the parallel federal discrimination statutes, the Division has jurisdiction; where it would not be unlawful under federal law (e.g. marital status, sexual orientation), the Division does not have jurisdiction.

*Questions about pre-emption, or other jurisdictional issues, should be discussed with the General Counsel. Cases should only be dismissed for lack of jurisdiction after consultation with General Counsel, unless the law is absolutely clear.*

# Conciliation

Conciliation or settlement is a method for resolving complaints arising under the Human Rights Law that can be beneficial in the proper case. The Human Rights Law provides for conciliation, in the discretion of the Division, as follows:

> If in the judgment of the division the circumstances so warrant, it may, at any time after the filing of the complaint, endeavor to eliminate such unlawful discriminatory practice by conference, conciliation and persuasion.

**N.Y. EXEC. L.** § 297.3(a).

"The division shall not disclose what has transpired in the course of its endeavors at conciliation and persuasion." **N.Y. EXEC. L.** § 297.3(a) last sentence; *see also* 9 **N.Y.C.R.R.** § 465.7(c). Conciliation efforts should never be taken into consideration when making a determination on the merits. *Lipani v. N.Y. State Div. of Human Rights*, 56 A.D.3d 560, 867 N.Y.S.2d 505 (2d Dept. 2008) (Division final order annulled as arbitrary and capricious where Division improperly admitted into evidence the parties' attempts at conciliation and the conciliation agreement itself).

See further below Procedure: Division Final Orders: Conciliations and Settlements, particularly as to required content of conciliation agreements.

# Investigative Tools

"Such investigation may be made by field visit, written or oral inquiry, conference, or any other method or combination thereof deemed suitable in the discretion of the regional director or the director of regional affairs." 9 **N.Y.C.R.R.** § 465.6(b). The Division is entitled to deference in the exercise of this discretion, and in using it expertise to analyze the merits of discrimination claims. *Camp v. N.Y. State Div. of Human Rights*, 300 A.D.2d

481, 751 N.Y.S.2d 564 (2d Dept. 2002); *Knight v. New York State Div. of Human Rights*, 118 A.D.3d 791, 987 N.Y.S.2d 217 (2d Dept. 2014). The "accoutrements of an adversarial trial" are not required in the investigation. *CBS, Inc. v. State Div. of Human Rights (Lieu)*, 54 N.Y.2d 921, 445 N.Y.S.2d 135 (1981).

The Division has broad discretion in the specific methods used to complete an investigation. The investigation must not be abbreviated or one-sided, and must present the complainant with a full and fair opportunity to present the claim. *Pascual v. N.Y. State Div. of Human Rights*, 37 A.D.3d 215, 829 N.Y.S.2d 99 (1st Dept. 2007); *Maltsev v. N.Y. State Div. of Human Rights*, 31 A.D.3d 641, 817 N.Y.S.2d 906 (2d Dept. 2006), lv. denied 7 N.Y.3d 718, 827 N.Y.S.2d 689 (2006); *Goston v. American Airlines*, 295 A.D.2d 932, 743 N.Y.S.2d 924 (4th Dept. 2002); *Rauch v. N.Y. State Div. of Human Rights*, 73 A.D.3d 930, 900 N.Y.S.2d 735 (2d Dept. 2010). The investigation must be "meaningful". *Ramirez v. N.Y. State Div. of Human Rights*, 4 N.Y.3d 789, 795 N.Y.S.2d 164 (2005).

### Field Visit

An investigation into a Division complaint is a wholly civil proceeding. Therefore, Division investigators do not require a search warrant to conduct a field visit of respondent's place of business, and may be justified in drawing an adverse inference from respondent's refusal to permit a field visit. However, in the absence of respondent's consent, Division investigators should not conduct a field visit, in order to avoid potential exposure to charges of trespass.

### Conference

The holding of a conference, particularly a two-party conference, is discretionary with the Division. *Gleason v. W.C. Dean Sr. Trucking, Inc.*, 228 A.D.2d 678, 646 N.Y.S.2d 20 (2d Dept. 1996); *Chirgotis v. Mobil Oil Corp.*, 128 A.D.2d 400, 512 N.Y.S.2d 686 (1st Dept. 1987), lv. denied 69 N.Y.2d 612, 517 N.Y.S.2d 1027 (1987). However, when a conference is not held, complainant must have been given a full and fair opportunity by other means to present his or her case and to rebut respondent's evidence. *Id*.

Evidence taken at a two-party conference is not under oath, and the parties should be reminded by Division staff that a two-party conference is not a hearing. The conference is to be conducted at the direction of the investigator in charge, and investigators should have a plan as to what should be achieved in holding the conference, and how they want the conference to proceed. The parties should be permitted to makes any statements as to relevant facts, and to present all relevant evidence. However, the parties have no right to object to the opposing party's evidence or to cross-examine the opposing party or witnesses.

### Written Questions

The Division may, at any time, serve written questions on a party or witness, demand a written response by a date certain, and draw an adverse inference (see below Adverse Inference) from a party's or witness' failure to comply.

## Witness Interviews

The parties' relevant witnesses should be interviewed and their contact information preserved. It is not Division practice to take the interview information in affidavit form, but affidavits may be created or presented during the investigation and retained in the file.

Not all witnesses mentioned by a party need be interviewed. Witnesses must be interviewed if it is necessary to form a rational basis for the determination. *State Div. of Human Rights v. N.Y. State Drug Abuse Control Comm.*, 59 A.D.2d 332, 399 N.Y.S.2d 541 (4th Dept. 1977). Witnesses whose information would be of "dubious value" need not be interviewed. *McFarland v. N.Y. State Div. of Human Rights*, 241 A.D.2d 108, 671 N.Y.S.2d 461 (1st Dept. 1998). Similarly, the Division need not interview witnesses whose testimony would clearly be duplicative.

The Division should make its own determination of what witnesses, if any, should be interviewed to complete the investigation.

When it is determined that employees of respondent should be interviewed as witnesses, this may be accomplished by requesting those witnesses be present at a conference with respondent, where respondent may choose to have counsel present. Witnesses who are officers or managers of a corporate respondent are considered "agents" of the respondent, and in light of this, the corporate respondent is entitled to have its attorney present during questioning. Witnesses who are not officers or managers of a corporate respondent may be contacted independently, and interviewed without counsel present. For guidance on this point, *see* General Counsel's Legal Opinion No. 1997-06.

## Document Requests

A subpoena is not required to request documents during the investigation. The Division is justified in drawing an adverse inference (see below Adverse Inference) when respondent fails without explanation to provide relevant documents.

## Subpoenas

The Division may issue subpoenas *duces tecum* at the regional level, requiring the "production for examination of any books, payrolls, personnel records, correspondence, documents, papers or any other evidence relating to any matter under investigation or in question before the division" at any time during the proceeding, including during the initial investigation into a complaint. 9 **N.Y.C.R.R.** § 465.14(a)(2) and § 465.14(b); **N.Y. Exec. L.** § 295.7. A Regional Director is an officer of the Division designated by the Rules of Practice to issue such subpoena. 9 **N.Y.C.R.R.** § 465.14(a)(2). (Regarding subpoenas issued during the hearing process, see below Procedure: Hearing: Evidentiary Issues: Subpoenas and Document Requests.)

While subpoena power is an investigative tool at the Division's disposal, as noted above in the section on Document Requests, it is unnecessary. Furthermore, because at the investigative stage there is no hearing examiner assigned who could rule on a it, a court proceding would be necessary to enforce a subpoena, making it a cumbersome procedure. If

the Regional Director determines that a subpoena is necessary, he or she should consult with the Litigation Bureau of the General Counsel's office to be sure that the subpoena is sufficiently narrowly drawn, and is properly served, so as to be enforceable.

It should also be noted that the Division may only issue subpoenas *duces tecum* (i.e. for documents) during the investigation.  Witness subpoenas can only be issued during the hearing.   (See below Procedure: Hearing: Evidentiary Issues: Subpoenas and Document Requests.)

### Adverse Inference

A respondent's failure to provide relevant information or documentation within its control, may justify the Division in drawing an adverse inference.  "Wherever a party knowing the truth of a matter in controversy refuses to speak or present necessary evidence every inference warranted by the evidence may be indulged against him."  General Counsel's Legal Opinion No. 1976-28.  However, it is only after a respondent has continued to refuse to cooperate with the Division's attempts to investigate that such an adverse inference should be drawn.  General Counsel's Legal Opinion No. 2005-08.

When a respondent persists in non-cooperation, the Division should pursue the investigation by any legitimate means available, and rely upon adverse inference only as a last resort, and only as to those matters that cannot be determined by other available means.

# Injunctions

The Human Rights Law provides that an injunction may be sought by the Division in state Supreme Court in connection with a filed complaint, as follows:

> At any time after the filing of a complaint with the division alleging an unlawful discriminatory practice under this article, if the division determines that the respondent is doing or procuring to be done any act tending to render ineffectual any order the commissioner may enter in such proceeding, the commissioner may apply to the supreme court in any county where the alleged unlawful discriminatory practice was committed, or where any respondent resides or maintains an office for the transaction of business, or if the complaint alleges an unlawful discriminatory practice under subdivision three or paragraphs (a), (b) or (c) of subdivision five of section two hundred ninety-six of this article, where the housing accommodation, land or commercial space specified in the complaint is located, for an order requiring the respondents or any of them to show cause why they should not be enjoined from doing or procuring to be done such act.  The order to show cause may contain a temporary restraining order and shall be served in the manner provided therein.  On the return date of the order to show cause, and after affording all parties an opportunity to be heard, if the court deems it necessary to prevent the respondents from rendering ineffectual an order relating to the

subject matter of the complaint, it may grant appropriate injunctive relief upon
such terms and conditions as it deems proper.

**N.Y. EXEC. L.** § 297.6.

The State Commissioner of Human Rights alone has standing to seek an injunction under
this section. *Sable v. Sperry Gyroscope Division*, 81 Misc.2d 429, 365 N.Y.S.2d 595
(Sup.Ct. N.Y.Co. 1975), *aff'd* 50 A.D.2d 527, 375 N.Y.S.2d 120 (1st Dept. 1975). The
injunction is intended to preserve the *status quo ante* while proceedings are pending before
the Division. *Kramarsky v. City of New York Police Department*, 90 Misc.2d 733, 395
N.Y.S.2d 937 (Sup.Ct. N.Y.Co. 1977). The courts will grant injunctive relief to the Division
only upon a showing both of immediate and irreparable harm to the complainant if the
injunction is not granted, and of the complainant's likelihood of success on the merits of the
underlying discrimination complaint pending before the Division. *Mangum v.
Sanguedolce*, 58 Misc.2d 37, 294 N.Y.S.2d 386 (Sup.Ct. Mon.Co. 1968); *Munroe v. 344
East 76th Realty Corp.*, 113 Misc.2d 155, 448 N.Y.S.2d 388 (Sup.Ct. N.Y.Co. 1982).

Generally, courts will not grant injunctions in employment cases, as complainants can be
made whole by relief granted after discrimination is found. The status quo may need to be
maintained in certain housing situations, e.g. where a housing accommodation is about to be
sold.

Any question about a possible injunction should be discussed immediately with the General
Counsel.


## Probable Cause

Probable cause exists where there is a reasonable ground for suspicion founded on facts and
circumstances strong enough in themselves to warrant a cautious person to believe that the
Human Rights Law is being violated. *Commissioner N.Y. State Dept. of Civil Service v.
State Human Rights App. Bd.*, 64 A.D.2d 999, 408 N.Y.S.2d 975 (3d Dept. 1978). In short,
it is no more than a determination by a Division regional director that there should be a
formal hearing on the complaint. *Board of Educ. of Tuxedo U.F.S.D. No. 3 v. State Div. of
Human Rights*, 68 Misc.2d 1035, 330 N.Y.S.2d 274 (Sup.Ct. Westch.Co. 1972).

Based on the relevant case law, the important aspects for distinguishing probable cause from
no probable cause are as follows:

- Complainant's relevant factual allegations must be investigated and relevant
  witnesses interviewed;

- Respondent's statements may not be accepted at face value and Complainant must
  have an opportunity to rebut all of Respondent's material statements;

- Complainant gets the benefit of the doubt; all material issues of fact, which are not otherwise resolved by the evidence discovered in the investigation, are temporarily resolved in the complainant's favor;

- The investigation must yield enough quality evidence to provide a rational basis for the determination; this includes relevant comparative data available;

- The probable cause standard must be applied correctly to the facts revealed in the investigation.

Application of the probable cause standard to the facts of the case may be summarized as follows:

**Probable cause should be found if, on the investigatory record as a whole, it is *reasonable* to believe that a prohibited discriminatory act has occurred. Only if, on the record as a whole, it is *not reasonable* to believe that a prohibited discriminatory act has occurred, the case should be dismissed for no probable cause.**

## Final Agency Investigative Determinations

Where probable cause is not found, the Regional Director makes a final agency determination, appealable to court, at the end of the investigation. The types of determinations that can be issued after investigation are as follows:

- Annulment
- Untimeliness Dismissal
- Withdrawal (with or without benefits)
- Pre-Determination Conciliation
- Administrative Convenience Dismissal
- Lack of Jurisdiction
- No Probable Cause

For annulment, see above Procedure: Complaints: Election of Remedies: Annulment.

For untimeliness dismissals, see above Procedure: Complaints: Statute of Limitations: Untimeliness Dismissal.

In the event of the need to dismiss a complaint on the basis of res judicata, see above Theories of Discrimination: Affirmative Defenses: Res Judicata: Claim Preclusion.

For all other types, see below Procedure: Division Final Orders.

## Reopening

"The commissioner, or any designee of the commissioner, … may … whenever justice so requires, or determination or record, and take such action as may be deemed necessary." 9 **N.Y.C.R.R.** § 465.20(a)(1).

In addition, the respondent may apply for reopening of a probable cause determination. "The commissioner, or any designee of the commissioner, may, on written application of a respondent, made within 60 days after the division issues a determination of probable cause, whenever justice so requires, reopen a proceeding and take such action as may deemed necessary." 9 **N.Y.C.R.R.** § 465.20(b)(1).

Where a complaint has been dismissed for lack of probable cause or jurisdiction, and the time to appeal has expired, and less than one year has passed since the dismissal, a complainant may request reopening. Such request "may be predicated only upon: (1) actions occurring subsequent to the investigation; or (2) an allegation of newly discovered evidence of wrongdoing, fraud or irregularity which the applicant could not, with due diligence, have discovered before the dismissal of the complaint." 9 **N.Y.C.R.R.** § 465.20(c).

"No case shall be reopened where an appeal has been taken to court from an order dismissing a case, for lack of probable cause or lack of jurisdiction. However, the division may request the Supreme Court to remand such a case for good cause." 9 **N.Y.C.R.R.** § 465.20(a)(2).

"Where a complaint has been withdrawn, it may not be reopened except upon an allegation that the withdrawal was induced by fraud or coercion, or error, contained in a written application for such reopening made to the division within one year after the issuance by the division of a notice that said complaint has been withdrawn, or within one year from the effective date hereof. Nothing herein contained shall be construed to limit the complainant's right to refile a withdrawn complaint no later than one year after the alleged discriminatory practice." 9 **N.Y.C.R.R.** § 465.20(d).

The General Counsel is the designee of the Commissioner for most reopening reviews under this Rule, and is explicitly stated in the Rule as the designee for requests by respondents to reopen probable cause determinations. 9 **N.Y.C.R.R.** § 465.20(b)(1).

## HEARING

If probable cause is found, the Human Rights Law requires that a public hearing into the allegations of the complaint be held before a hearing examiner of the Division. **N.Y. EXEC. L.** § 297.4(a). (The hearing examiner is generally referred to at the Division, and in the Division's Rules, as the Administrative Law Judge.) The purpose of the hearing is to create a factual record as the basis for the Commissioner to render a final decision on