**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**NEW HOPE FAMILY SERVICES, INC.,**

                                        **Plaintiff,**

        **vs.**                                                 **5:21-CV-01031**
                                                                        **(MAD/TWD)**

**LETITIA JAMES,** *in her official capacity as New*
*York State Attorney General*; **LICHA NYIENDO,**
*in her official capacity as Commissioner of the New*
*York Division of Human Rights*; **MELISSA**
**FRANCO,** *in her official capacity as Deputy*
*Commissioner for Enforcement of the New York*
*Division of Human Rights*; **GINA MARTINEZ,** *in*
*her official capacity as Deputy Commissioner for*
*Regional Affairs of the New York Division of Human*
*Rights*; **JULIA DAY,** *in her official capacity as*
*Syracuse Regional Director of the New York Division*
*of Human Rights*; and **WILLIAM FITZPATRICK,**
*in his official capacity as Onondaga County District*
*Attorney*,

                                        **Defendants.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**ALLIANCE DEFENDING FREEDOM**             **DAVID A. CORTMAN, ESQ.**
**GEORGIA OFFICE**
1000 Hurricane Shoals Road, NE
Suite D1100
Lawrenceville, Georgia 30078
Attorneys for Plaintiff

**ALLIANCE DEFENDING FREEDOM**             **JONATHAN A. SCRUGGS, ESQ.**
**ARIZONA OFFICE**                          **ROGER GREENWOOD BROOKS, ESQ.**
15100 N. 90th Street                         **JEREMIAH GALUS, ESQ.**
Scottsdale, Arizona 85260                    **MARK LIPPELMANN, ESQ.**
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**                  **ADRIENNE J. KERWIN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants Letitia James,

Licha Nyiendo, Melissa Franco, Gina
Martinez, and Julia Day

**ONONDAGA COUNTY DEPARTMENT**      **JOHN E. HEISLER , JR., ESQ.**
**OF LAW**
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendant William Fitzpatrick

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff New Hope Family Services, Inc. ("New Hope") commenced this civil rights

action on September 17, 2021, asserting that a complaint filed against it in the New York State

Division of Human Rights (the "NYDHR") and ensuing investigation threaten its free speech and

free exercise of religion rights under the First and Fourteenth Amendments. *See* Dkt. No. 1.

Currently before the Court is New Hope's motion for a preliminary injunction, *see* Dkt. No. 31,

and Defendants'[1] cross motion to dismiss the complaint, *see* Dkt. No. 34. For the reasons set forth

below, Defendants' cross motion to dismiss is denied and New Hope's motion for a preliminary

injunction is granted.

**II. BACKGROUND**

According to the complaint, New Hope is a religious non-profit corporation that operates

as a New York voluntary adoption provider authorized to place children with New York State

residents through an adoption program. *See* Dkt. No. 1 at ¶¶ 4, 14. Defendant James is the New

---

[1] Defendant Fitzpatrick is not a party to the cross motion to dismiss and has submitted
letters indicating that he does not intend to oppose either that motion or New Hope's motion for a
preliminary injunction. *See* Dkt. Nos. 32, 36. For ease of reference, Defendants James, Nyiendo,
Franco, Martinez, and Day will be referred to broadly as "Defendants" for the remainder of this
Memorandum-Decision and Order.

York State Attorney General; Defendants Nyiendo, Martinez, Franco, and Day are commissioners or directors at the NYDHR; and Defendant Fitzpatrick is the District Attorney for Onondaga County, New York. *See id.* at ¶¶ 5-10.

The complaint alleges that New Hope's Christian faith and religious beliefs motivate and permeate its mission and, as a result, New Hope does not place children with unmarried couples or same-sex couples. *See id.* at ¶¶ 20, 22. When presented with an unmarried or same-sex applicant, New Hope's policy is to avoid "a formal rejection" of those applicants as such a rejection "would complicate those applicants' ability to later obtain approval through any agency." *Id.* at ¶ 23. Instead, it is New Hope's practice to "politely and respectfully inform[ ] [such applicants] that because of its beliefs as a Christian ministry, New Hope cannot ... serve them ... [but] is willing to provide referrals to other agencies that will." *Id.*

In October 2018, the New York Office of Child and Family Services ("OCFS") advised New Hope that this referral policy violated a regulation prohibiting "discrimination and harassment against applicants for adoption services on the basis of race, creed, color, national origin, age, sex, sexual orientation, gender identity or expression, marital status, religion, or disability." 18 N.Y.C.R.R. § 421.3(d) ("Section 421.3"); *see also* Dkt. No. 1 at ¶ 75. OCFS instructed New Hope that it must revise the referral policy to comply with Section 421.3 or lose its authorization to act as an adoption agency. *See* Dkt. No. 1 at ¶ 75. In December 2018, New Hope commenced an action against OCFS in this Court contending, among other things, that OCFS' demand violated its free speech and free exercise rights protected under the First Amendment (the "Poole Action"). *See id.* at ¶ 76. As relevant here, on September 6, 2022, this Court granted New Hope's motion for summary judgment and permanent injunction enjoining OCFS "from enforcing 18 N.Y.C.R.R. § 421.3(d) insofar as it would compel New Hope to

process applications from, or place children for adoption with, same-sex couples or unmarried cohabitating couples, and insofar as it would prevent New Hope from referring such couples to other agencies."[2] *New Hope Fam. Servs., Inc. v. Poole*, No. 5:18-CV-01419, 2022 WL 4094540, *7 (N.D.N.Y. Sept. 6, 2022).  In so doing, the Court concluded that (1) Section 421.3(d) compelled or prohibited New Hope's speech, and (2) Section 421.3(d) was not narrowly tailored to advance the state's compelling interests.  *See id.* at *4-6.

Meanwhile, on August 19, 2021, "an individual contacted New Hope purporting to inquire vaguely and generally about adoption."  Dkt. No. 1 at ¶ 81.  New Hope's director responded by stating, in relevant part, that

> [b]ecause of New Hope's convictions as a Christian adoption service, New Hope works with adoptive families built around a married husband and wife.  Others may be eligible to adopt under New York law, and upon request New Hope can provide contact information about other adoption services in the area.

*Id.*  The inquiring individual responded by claiming "that New Hope's practices violate New York law, ... referring by name to New Hope's outside counsel," but did not request or apply for any adoption services from New Hope.  *Id.* at ¶¶ 82, 84.  Four days later, the inquiring individual "filed a lengthy, single-spaced complaint with the [NYDHR]" (hereinafter, the "NYDHR Complaint") accusing "New Hope of violating New York law, and repeatedly referenc[ing] 18 N.Y.C.R.R. §421.3(d)."  *Id.* at ¶ 83.  On August 23, 2021, the same day that the NYDHR Complaint was filed, the NYDHR sent a letter to New Hope enclosing the NYDHR Complaint and demanding that New Hope respond to all allegations within 15 days.  *See id.* at ¶ 86.

---

[2]  On October 5, 2020, the Court granted New Hope's motion for preliminary injunctive relief, prohibiting OCFS from revoking New Hope's perpetual authorization to place children for adoption while the Poole Action was pending.  *See New Hope Fam. Servs., Inc. v. Poole*, 493 F. Supp. 3d 44 (N.D.N.Y. 2020).

New Hope then commenced this action on September 17, 2021, "challenging, as a violation of rights protected by the First and Fourteenth Amendments to the United States Constitution, the active threat by the [NYDHR] to investigate and penalize New Hope ... for its faith-based choice to devote its private energies and resources to placing infants with couples consisting of a mother and father committed to each other in marriage." Dkt. No. 1 at 3. New Hope now moves for a preliminary injunction, seeking to enjoin Defendants from directly or indirectly enforcing New York Executive Law § 296(2)(a) and New York Civil Rights Law § 40-c(2) against it for (1) "publicly explaining, in any context and through any medium, its religious beliefs concerning marriage, family, and the best interests of children, or from publicly explaining its constitutionally protected practice of working with and placing children with only married couples comprising a mother and a father"; and (2) "its constitutionally protected practice of working with and placing children with only married couples comprising a mother and a father." Dkt. No. 31 at 1-2.

Currently before the Court is New Hope's motion for a preliminary injunction, *see* Dkt. No. 31, and Defendants' cross motion to dismiss the complaint, *see* Dkt. No. 34. New Hope argues that it has established a likelihood of success on the merits either because (1) New Hope is not a place of public accommodation within the scope of Executive Law § 296 and Civil Rights Law § 40-c; or (2) the Executive Law § 296 and Civil Rights Law § 40-c violate New Hope's First Amendment rights in a manner that triggers strict scrutiny, and those statutes cannot pass strict scrutiny. *See* Dkt. No. 31-1. In opposition, Defendants argue that its cross motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure should be granted because (1) *Younger* abstention applies, depriving this Court of jurisdiction; (2) the complaint fails to state a claim against the Attorney General; and (3) the Civil Rights Law has not

been enforced against New Hope.  *See* Dkt. No. 34-6.  Defendants further argue that the motion

for a preliminary injunction should be denied in any event because New Hope has failed to

establish that it will suffer irreparable harm and that balance of the equities and public interest

weigh in favor of injunctive relief.  *Id.*  The parties submitted updated positions at the Court's

request on September 14, 2022.  *See* Dkt. Nos. 40, 41.

### III. DISCUSSION

**A.**     **Defendants' Motion to Dismiss**

   *1. Standard of Review*

   "A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must

decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a

decision on the merits and, therefore, an exercise of jurisdiction."  *Dutrow v. New York State*

*Gaming Commission*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*,

607 Fed. Appx. 56 (2d Cir. 2015).  "[A] federal court generally may not rule on the merits of a

case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,]

subject-matter jurisdiction)."  *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S.

422, 430-31 (2007) (citation omitted).  "A case is properly dismissed for lack of subject matter

jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power

to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

   When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing

by a preponderance of the evidence that subject matter jurisdiction exists.'"  *APWU v. Potter*, 343

F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a

district court may consider evidence outside the pleadings."  *Morrison v. Nat'l Australia Bank*

*Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken.'" *Greenblatt v. Gluck*, No. 03 Civ. 597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1992)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### 2. Younger Abstention

"In general, 'federal courts are obliged to decide cases within the scope of federal jurisdiction.'" *Disability Rts. New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)); *see also Jones v. Cnty. of Westchester*, 678 Fed. Appx. 48, 49 (2d Cir. 2017) ("Although they are courts of limited jurisdiction, federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given [to] them'") (quotation omitted). "'[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'" *Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 140 S. Ct. 2412 (2020) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989)). "*Younger* abstention ... is one of [those] 'extraordinary and narrow exception[s]' to that obligation." *Jones*, 678 Fed. Appx. at 49; *see also Younger v. Harris*,

401 U.S. 37 (1971).

"In *Sprint*, the Supreme Court instructed us that a district court should abstain under *Younger* 'only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Cavanaugh v. Geballe*, 28 F.4th 428, 432 (2d Cir. 2022) (quoting *Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427 (2d Cir. 2015)); *see also Sprint*, 571 U.S. at 78.  "[A]fter applying the categorical *Sprint* approach, [a] court will consider three additional, non-dispositive factors to determine whether abstention is appropriate: 1) whether there is a 'pending state proceeding,' 2) whether that proceeding 'implicates an important state interest,' and 3) whether 'the state proceeding affords an adequate opportunity for judicial review of ... federal constitutional claims.'"  *Lowell v. Vermont Dep't of Child. & Fams.*, 835 Fed. Appx. 637, 639 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2715 (2021) (quoting *Falco*, 805 F.3d at 427); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). These additional factors "'[are] not dispositive; they [are], instead, *additional* factors appropriately considered by the federal court before invoking *Younger*.'"  *Cavanaugh*, 28 F.4th at 432 (quoting *Sprint*, 571 U.S. at 81).

Where the conditions of *Younger* abstention are met, "'abstention is mandatory and its application deprives the federal court of jurisdiction in the matter.'" *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 Fed. Appx. 16, 18 (2d Cir. 2012) (quotation omitted).  However, "even if *Younger*'s prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'"  *Lowell*, 835 Fed. Appx. at 639 (quotation omitted).

9

### a. *Sprint's* Categorical Test

The NYDHR proceeding is not a criminal prosecution, nor does it "touch on a state court's ability to perform its judicial function." *Sprint*, 571 U.S. at 79. Thus, whether *Younger* divests the court of jurisdiction over this action depends on whether the NYDHR proceeding falls within "certain 'civil enforcement proceedings.'" *Sprint*, 571 U.S. at 78 (quotation omitted). The "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Id.* at 79 (quotation omitted); *see also Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014) ("[T]he critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution"). "In determining whether a civil enforcement action is akin to a criminal proceeding, a court must consider whether the action [(1)] involved a state sanctioning a party 'for some wrongful act,' [(2)] was 'initiated by the State to sanction the federal plaintiff,' and [(3)] involved 'investigations that culminate in the filing of a formal complaint or charges.'" *Lowell*, 835 Fed. Appx. at 639 (some brackets omitted) (quoting *Sprint*, 571 U.S. at 79-80).

The Court holds that the NYDHR proceeding was not a civil enforcement proceeding within the meaning of *Sprint* because, at the time the federal complaint was filed, the NYDHR proceeding was still in the investigation phase. "'[T]he date of filing of the federal complaint is the relevant date for purposes of determining *Younger*'s applicability' because 'the Supreme Court held that *Younger* applies if state court proceedings were pending at the time of the filing of the federal complaint.'" *Hale v. Pate*, 694 Fed. Appx. 682, 683-84 (11th Cir. 2017) (quotation omitted); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987); *Astoria Gen. Contracting Corp. v. Off. of Comptroller of City of New York*, 159 F. Supp. 3d 385, 397 (S.D.N.Y. 2016) (citing *Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir. 1995)). Although the parties have

indicated that a probable cause determination has since been issued by the NYDHR,[3] the only concrete action taken by the NYDHR *at the time the federal complaint was filed* on September 17, 2021, was serving the NYDHR complaint on New Hope.  *See* Dkt. No. 40-1 at 15.  Thus, the NYDHR proceeding was still firmly in the early stages of the "investigation" phase, where the NYDHR "determines whether (1) it has jurisdiction over the complaint; and (2) whether there is probable cause to believe that the ... entity named in the complaint ... has engaged, or is engaging in, an unlawful discriminatory practice."  Dkt. No. 34-1 at ¶¶ 11-14.[4]  Although the Second Circuit does not appear to have directly spoken on whether a proceeding in the preliminary investigative phase meets the requirements of a civil enforcement proceeding, a number of other federal courts across the country have determined that such proceedings are not civil enforcement proceedings and do not trigger *Younger* abstention.  *See PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev.*, 978 F.3d 871, 886 (3d Cir. 2020) (holding that a formal audit could not be considered an ongoing judicial proceeding because it did not involve judicial oversight), *cert. denied sub nom. PDX N., Inc. v. Asaro-Angelo*, 142 S. Ct. 69 (2021); *Winter v. Wolnitzek*, 834 F.3d 681, 688 (6th Cir. 2016) (holding that even "a finding of probable cause does not necessarily mean a formal proceeding exists"); *Google, Inc. v. Hood*, 822 F.3d 212, 223 (5th Cir. 2016) (holding that "*Younger* does not apply merely because 'a state bureaucracy has initiated

---

[3] On September 7, 2022, the NYDHR issued a determination finding that it had jurisdiction over the matter and that probable cause existed to believe that New Hope engaged in "an unlawful discriminatory practice relating to public accommodation because of marital status, sexual orientation in violation of [New York Executive] Law, [article] 15."  *See* Dkt. No. 40-1 at 2.  The September 7 determination indicated that the matter was being recommended for a public hearing.  *See id.*  Intriguingly, the September 7 determination was issued one day after this Court granted permanent injunctive relief in the Poole Action.

[4] In fact, New Hope had not even responded to the NYDHR complaint until after this action was commenced.  *See* Dkt. No. 40-1 at 17.

11

contact with a putative federal plaintiff,' ... or 'a state investigation has begun'") (quotations

omitted); *Mulholland*, 746 F.3d at 817 ("The possibility that a state proceeding may lead to a

future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention; a federal

court need not decline to hear a constitutional case within its jurisdiction merely because a state

investigation has begun"); *see also Downtown Soup Kitchen v. Municipality of Anchorage*, 406 F.

Supp. 3d 776, 789–90 (D. Alaska 2019); *Myers v. Thompson*, 192 F. Supp. 3d 1129, 1137-38 (D.

Mont. 2016).

Because the NYDHR proceeding was not a civil enforcement proceeding at the time the

federal complaint was filed, *Younger* abstention is not appropriate here.  Accordingly,

Defendants' motion to dismiss on this ground is denied.

### 3. Claims Against the New York State Attorney General

Defendants contend that the complaint has failed to state a claim against Defendant James

because the Attorney General "'has no connection with the enforcement of'" the statutes at issue

and "plays no role" in the relevant administrative process.  Dkt. No. 34-6 at 20 (quoting *Sabin v.

Nelson*, No. 7:12-CV-1373, 2014 WL 2945770, *2 (N.D.N.Y. June 30, 2014)).[5]  However, the

Court finds that Defendant James is extensively involved in the enforcement of the statutes at

issue in this case.  As was stated quite clearly in the complaint, *see* Dkt. No. 1 at ¶ 5, the New

York State Attorney General has the authority to enforce Executive Law § 296 and Civil Rights

Law § 40 against New Hope by (1) filing administrative complaints with the NYDHR for

violations of Executive Law § 296, *see* N.Y. Exec. Law § 297(1); (2) prosecuting violations of

---

[5] Defendants also suggest that the complaint in this matter only seeks to "enjoin an ongoing administrative proceeding."  Dkt. No. 24-6 at 20.  That suggestion is incorrect.  The complaint's request for relief goes well beyond the NYDHR proceeding, instead seeking to broadly enjoin Defendants from ever enforcing Executive Law § 296 or Civil Rights Law § 40 against New Hope in connection with its referral policy.  *See* Dkt. No. 1 at 39-40.

NYDHR orders, *see* N.Y. Exec. Law § 299; N.Y. County Law § 700; and (3) prosecuting

violations of Civil Rights Law § 40-c, *see* N.Y. Civ. Rights Law § 40-d; N.Y. County Law § 700;

N.Y. Exec. Law § 63(10); and (4) initiating civil actions to enforce NYDHR orders upon request

of the NYDHR commissioner, *see* N.Y. Exec. Law § 63(9).

Accordingly, Defendants' motion to dismiss Defendant James is denied.

### 4. New Hope's Standing to Challenge Civil Rights Law § 40-c

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citing U.S. Const.

art. III, § 2). A plaintiff bears the burden of establishing the three "irreducible constitutional

minimum" elements of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Defendants contend that New Hope

cannot satisfy the injury requirement with respect to Civil Rights Law § 40 because the complaint

does not allege that the NYDHR has commenced a proceeding against New Hope under that

statute. *See* Dkt. No. 34-6 at 20-21.

To establish an "injury in fact," a plaintiff must show that he or she suffered "an invasion

of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,

not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495

U.S. 149, 155 (1990)). Where the plaintiff alleges "injury based on the threat of prosecution, the

plaintiff need not 'expose himself [or herself] to liability before bringing suit to challenge the

basis for the threat—for example, the constitutionality of a law threatened to be enforced.'" *Adam

v. Barr*, 792 Fed. Appx. 20, 21 (2d Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549

U.S. 118, 128-29 (2007)).  "[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014).

"The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue."  *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).  A credible threat of prosecution cannot rest "on fears that are 'imaginary or speculative,'" *id.* (quotation omitted), and it "will not be found where 'plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible.'"  *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (quotation omitted).  Nevertheless, courts generally presume "that the government will enforce the law as long as the relevant statute is recent and not moribund."  *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013).  The Second Circuit has observed that the relevant standard "'sets a low threshold and is quite forgiving to plaintiffs seeking [such] preenforcement review,'" *Cayuga Nation*, 824 F.3d at 331 (quotation omitted), especially when First Amendment rights are in play.  *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013).

New Hope has sufficiently alleged a credible threat of prosecution under Civil Rights Law § 40-c.  Initially, New Hope's fears of prosecution concerning its referral policy are certainly not "'imaginary or speculative.'"  *Knife Rts.*, 802 F.3d at 384 (quotation omitted).  Defendants have now made repeated attempts to prosecute New Hope for that policy, including issuing a finding of probable cause under Executive Law § 296 in the NYDHR proceeding the day after this Court issued a permanent injunction finding that Section 421.3(d) violated New Hope's First Amendment rights.  Defendants appear to have both the full authority to prosecute New Hope for

its referral policy under Civil Rights Law § 40-c[6] and the ability to impose civil fines and criminal penalties for violations under Civil Rights Law § 40-d.  Given that the enforcement of Section 40-c appears to implicate New Hope's First Amendment rights, the Court finds that is it fair to presume under these circumstances that New hope has alleged a credible threat of prosecution under Civil Rights Law § 40-c.

Accordingly, Defendants' motion to dismiss for lack of standing is denied.

**B.      Plaintiff's Motion for a Preliminary Injunction**

*1. Standard of Review*

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).  "A decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted).

A party seeking a preliminary injunction must establish "'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'" *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2003) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135

---

[6]  Defendants argue New Hope is not entitled to relief with respect to Civil Rights Law § 40 because that statute only "prohibits discrimination based on race, creed, color or national origin" and "New Hope does not allege a claim of discrimination on any of these grounds." Dkt. No. 34-6 at 21.  Although it is true that Civil Rights Law § 40 only refers to "race, creed, color[,] or national origin," Section 40-c states that "[n]o person shall, because of ... sex, marital status, [or] sexual orientation ... be subjected to any discrimination in his or her civil rights ... by any other person or by any firm, corporation[,] or institution."  New Hope's policy of declining to provide services to unmarried or same sex couples appears to fall comfortably within the scope Section 40-c.

(2d Cir. 2003)).

The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Consonant with this view, the Second Circuit has held that a district court may consider hearsay evidence when deciding whether to grant preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Therefore, the strict standards for affidavits under the Federal Rules of Evidence and in support of summary judgment under Rule 56(c)(4) of the Federal Rules of Civil Procedure requiring that an affidavit be made on personal knowledge are not expressly applicable to affidavits in support of preliminary injunctions. *See Mullins v. City of New York*, 634 F. Supp. 2d 373, 384 (S.D.N.Y. 2009) (citations omitted). Nevertheless, courts have wide discretion to assess the affidavit's credibility and generally consider affidavits made on information and belief to be insufficient for a preliminary injunction. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (2d ed. 1995); *Mullins*, 634 F. Supp. 2d at 385, 390 n.115 (declining to fully credit the "defendants' hearsay affidavit" and noting that while the court "may consider hearsay evidence in a preliminary injunction hearing ..., a court may weigh evidence based on whether such evidence would be admissible under the Federal Rules of Evidence").

Even if the plaintiff demonstrates irreparable harm and a likelihood of success on the merits, the remedy of preliminary injunctive relief may still be withheld if equity so requires. "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying

of such relief." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted).

"[B]ecause New Hope seeks a preliminary injunction to stay government action taken in the public interest pursuant to a statutory (and regulatory) scheme, it must establish both a likelihood of success on the merits and irreparable harm in the absence of an injunction." *New Hope*, 966 F.3d at 181 (citing *Alliance for Open Soc'y Int'l, Inc. v. Agency for Int'l Dev.*, 651 F.3d 218, 230 (2d Cir. 2011), *aff'd*, 570 U.S. 205 (2020); *Alleyne v. N.Y. State Educ. Dep't*, 516 F.3d 96, 101 (2d Cir. 2008)).  "The 'loss of First Amendment freedoms ... unquestionably constitutes irreparable injury.'" *Id.* (quoting *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (1996)).  "Thus, 'the dominant, if not the dispositive, factor' in deciding whether to grant a preliminary injunction in this case is New Hope's ability to demonstrate likely success on the merits of its Free Exercise and Free Speech claims." *Id.* (quoting *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)).

### 2. Likelihood of Success on the Merits

"The New York State Human Rights Law ... is comprised of the New York Executive Law §§ 292 *et seq.* (which provides the substance of the law) and the New York Civil Rights Law §§ 40 *et seq.* (which provides for penalties)." *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 399-400 (E.D.N.Y. 2017) (citing *de la Rosa v. 597 Broadway Development Corp.*, No. 13-CV-7999, 2015 WL 7351540, *17 n.16 (S.D.N.Y. Aug. 4, 2015) (using the "collective term NYSHRL" to refer to both statutes); *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) ("Facts sufficient to sustain a cause of action under New York Executive Law section 296 will support a cause of action under section 40-c of the Civil Rights Law")).  The Executive Law provides that it "shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee *of any place of public*

*accommodation*, resort or amusement, because of the ... sexual orientation, gender identity or expression, ... sex, ... [or] marital status ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a) (emphasis added); *see also Indig v. Vill. of Pomona*, No. 18-CV-10204, 2019 WL 6173425, *10 (S.D.N.Y. Nov. 19, 2019) ("[A] plaintiff alleging a violation of Section 40-c must plead 'denial of access to places of public accommodation'") (quotation omitted).

The statutory definition of "place of public accommodation" is set forth in Executive Law § 292(9), which provides a list of specific places of public accommodation.[7] This is a non-exhaustive list that "must be liberally construed to accomplish the purposes of the statute." *Cahill v. Rosa*, 89 N.Y.2d 14, 20 (1996); *see also Gifford v. McCarthy*, 137 A.D.3d 30, 35 (2016) ("Executive Law § 292(9) 'defines place of public accommodation, ... inclusively and illustratively, not specifically'") (quotation omitted). Thus, the fact that "adoption agencies" are not expressly included in Executive Law § 292(9) does not preclude a finding that they are places of public accommodation. *See, e.g., Cahill*, 89 N.Y.2d at 19-20 (examining whether dental offices were places of public accommodation despite dental offices not being expressly included in Executive Law § 292(9)). The New York Court of Appeals has determined that "'[t]he statutory language [underlying the term "place of public accommodation"] states two concepts, [1] the idea of public accommodation in the broad sense of providing conveniences and services to the public, and [2] the idea of place.'" *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 399 (E.D.N.Y. 2017) (quoting *U.S. Power Squadrons v. State Hum. Rts. Appeal Bd.*, 59 N.Y.2d 401, 410 (1983)).

---

[7] Civil Rights Law § 40 sets forth a very similar list.

Recently, in *Fulton v. City of Philadelphia, Pennsylvania*, the Supreme Court held that a private religious foster agency was not a place of public accommodation under a Philadelphia ordinance. *See Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1879-81 (2021); *see also* Phila. Code § 9–1102(1)(w). The Court looked to examples of public accommodations from a related Pennsylvania state antidiscrimination statute and suggested that the "'common theme'" between those examples was that they must "'provide a benefit to the general public allowing individual members of the general public to avail themselves of that benefit if they so desire.'" *Id.* at 1880 (quotation omitted). In contrast, the Court found that certification of a foster parent was "not 'made available to the public' in the usual sense of the words" because it "involves a customized and selective assessment that bears little resemblance to staying in a hotel, eating at a restaurant, or riding a bus." *Id.* The Court emphasized the rigorous nature of the certification process, including that it "takes three to six months" and involves "background checks," a "medical exam," and "an intensive home study" where a foster agency evaluates "applicants' 'mental and emotional adjustment,' 'community ties with family, friends, and neighbors,' and '[e]xisting family relationships, attitudes and expectations regarding the applicant's own children and parent/child relationships.'" *Id.* (quoting 55 Pa. Code § 3700.64). Thus, the Court concluded that "the one-size-fits-all public accommodations model is a poor match for the foster care system" and the "uniquely selective nature of the certification process." *Id.* at 1881.

Here, the Court concludes that New Hope is not a public accommodation within the meaning of Executive Law § 292(9) or Civil Rights Law § 40. Defendants' only argument on this issue is that *Fulton* is distinguishable from this matter because Executive Law § 292(9) "differs significantly" from the Philadelphia ordinance, "in that New York law is much more expansive and inclusive." Dkt. No. 34-6 at 16. Initially, the Court is skeptical that Executive Law § 292(9)

is significantly broader than Philadelphia's ordinance; the language of both covers any "place" that provides or makes available goods and services to the "public." *Compare* Phila. Code § 9–1102(1)(w) (defining a public accommodation as "'[a]ny place, provider or public conveyance, whether licensed or not, which solicits or accepts the patronage or trade of the public or whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public'"), *with U.S. Power Squadrons*, 59 N.Y.2d at 410 (holding that the statutory language of Executive Law § 292(9) "states two concepts, the idea of public accommodation in the broad sense of providing conveniences and services to the public, and the idea of place). Even assuming that the language of Executive Law § 292(9) is more expansive than that of the ordinance in *Fulton*, the considerations that drove the Supreme Court's determination in *Fulton* still apply just as persuasively to this matter. Just as with *Fulton*, a common theme between all of the examples listed in Executive Law § 292(9) is that "individual members of the general public [can] avail themselves of that benefit if they so desire," without any significant barrier to obtaining that benefit. *Fulton*, 141 S. Ct. at 1880. Furthermore, to receive the benefit of New Hope's services (*i.e.*, adoption), an applicant must pass through a veritable gauntlet of requirements during a "customized and selective" certification process that is strikingly similar in rigorousness to the one in *Fulton*. *Id.* Thus, under the reasoning expressed by the Supreme Court in *Fulton*, this Court concludes that New Hope does not meet the statutory definition of a public accommodation,[8] and neither Executive Law § 296(2)(a) nor Civil Rights

---

[8] This conclusion finds further support from the Poole Action, where the Second Circuit expressed, in *dicta*, its skepticism of the idea that New Hope qualified as a public accommodation. *See New Hope*, 966 F.3d at 166-67. In particular, the court noted that (1) "New Hope's adoption services are not easily analogized to traditional public accommodations such as barbershops that provide haircuts, accounting firms that offer tax advice, or bakeshops that make wedding cakes"; and (2) "children awaiting adoption hardly equate to a commodity, even if their 'supply' in New York (unfortunately) greatly exceeds 'demand.'" *Id.*

Law § 40-c are applicable to New Hope's adoption services.[9]

Accordingly, the Court holds that New Hope has demonstrated a likelihood of success on the merits. The remaining preliminary injunction factors also favor granting a preliminary injunction in New Hope's favor. First, as noted above, the "'loss of First Amendment freedoms ... unquestionably constitutes irreparable injury.'" *New Hope*, 966 F.3d at 181 (quotation omitted). Second, the balance of the equities is in New Hope's favor, as New Hope faces both fines and criminal penalties if it is found to have violated Executive Law § 296 and Civil Rights Law § 40-c, for the exact same referral policy that this Court very recently protected with permanent injunctive relief in the Poole Action. In contrast, there appear to be few consequences for Defendants or the public if a preliminary injunction was granted here. New Hope was utilizing this referral policy for years without any complaints being filed with the NYDHR, and unmarried and same-sex couples will continue to have access to adoption services through the multitude of other agencies providing adoption services in New York state. A preliminary injunction here will merely preserve the existing status quo as litigation proceeds in this matter and the Poole Action. Third, and finally, it is well established that "securing First Amendment rights is in the public interest." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (citing *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003) ("[T]he Government does not have an interest in the enforcement of an unconstitutional law")).

Thus, New Hope's motion for a preliminary injunction is granted.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

---

[9] Because the Court has determined that neither N.Y. Exec. Law § 296(2)(a) or Civil Rights Law § 40-c are applicable to New Hope, it need not address whether those statutes would violate New Hope's constitutional rights.

applicable law, the Court hereby

    **ORDERS** that Defendants' cross motion to dismiss (Dkt. No. 34) is **DENIED**, and the Court further

    **ORDERS** that New Hope's motion for a preliminary injunction (Dkt. No. 31) is **GRANTED**; and the Court further

    **ORDERS** that Defendants are enjoined from directly or indirectly enforcing New York Executive Law § 296 or Civil Rights Law § 40-c against New Hope insofar as they would impose any penalty on New Hope for referring same-sex couples or unmarried cohabitating couples to other agencies rather than providing them adoption services during the pendency of this litigation; and the Court further

    **ORDERS** that, seeing no request from either party, New Hope is not required to post a bond or undertaking as security for granting the above-mentioned preliminary injunction at this time; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 28, 2022
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

22